**E-FILED**
Thursday, 22 October, 2020  08:14:50 AM
Clerk, U.S. District Court, ILCD

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of | |
| *(Briefly describe the property to be searched or identify the person by name and address)* ) | |
| **INFORMATION ASSOCIATED WITH SNAPCHAT USER ID fityshdesofgray**, FURTHER DESCRIBED IN Attachment A, which is attached hereto and incorporated herein ) ) ) ) ) | Case No. 20-MJ- 7136 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Information associated with Snapchat User ID fityshdesofgray, further described in Attachment A, which is attached hereto and incorporated herein, that is stored at premises controlled by Snap, Inc.

located in the _____ Central _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252 & 2252A | Child Pornography Trafficking Offenses |

The application is based on these facts:

See Affidavit of Investigator Dwayne Roelf, TFO, HSI

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Dwayne Roelf

*Applicant's signature*

Investigator Dwayne Roelf, TFO, HSI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
electronic mail and telephone _____ *(specify reliable electronic means).*

s/ Tom Schanzle-Haskins

Date: 10/ /2020

*Judge's signature*

City and state: Springfield, IL

Tom Schanzle-Haskins, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
SNAPCHAT USER ID fityshdesofgray,
FURTHER DESCRIBED IN
ATTACHMENT A, THAT IS STORED AT
PREMISES CONTROLLED BY SNAP,
INC.

Case No. 20-MJ-  7136

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Dwayne Roelfs, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for

information associated with certain accounts that is stored at premises owned, maintained,

controlled, or operated by Snap, Inc., a social media service provider, headquartered at 2772

Donald Douglas Loop North, Santa Monica, California. The information to be searched is

described in the following paragraphs and in Attachment A. This affidavit is made in support of

an application for a search warrant under 18 U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to

require Snap, Inc. to disclose to the government copies of the information (including the content

of communications) further described in Section I of Attachment B. Upon receipt of the

information described in Section I of Attachment B, a government-authorized person will review

that information to locate the items described in Section II of Attachment B.

2.     I am a Deputy Sheriff, with the Champaign County Sheriff's Office, assigned to the

Criminal Investigations Division. I have been employed at the Champaign County Sheriff's

Office for over twenty–five years.  I am also a Task Force Officer (TFO) with the U.S. Department

of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Resident Agent in Charge (RAC) in Springfield, Illinois since 2020. As part of my duties as an HSI/ICE TFO, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.  I have also participated in the execution of numerous search warrants, many of which involved child exploitation and/or child pornography offenses.

3.      As a TFO, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, child exploitation and child pornography offenses enumerated in 18 U.S.C. §§ 2251, 2252 and 2252A, et seq. As an HSI TFO, I am authorized to execute warrants issued under the authority of the United States.

4.      The statements contained in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. Since this affidavit is being submitted for the limited purpose of securing search warrants, I have not included every fact known to me concerning this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. I have set forth only the facts that I believe are necessary to

establish probable cause that to believe that fruits, evidence and instrumentalities of the offenses listed below are in the following place:

5.      As a result of the investigation described more fully below, there is probable cause to believe that evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of federal law, including 18 U.S.C. § 2252A and have been committed by the Snapchat account listed under the account Screen/User Name: "fityshdesofgray". There is also probable cause to search the information described in Attachment A, associated with a Snapchat account, identified as:

SNAPCHAT USER ID: **fityshdesofgray**,
PHONE NUMBER: **217-778-9818**,
DATE OF BIRTH: **08-07-1999**,
AND/OR EMAIL ADDRESS: **graylin1999@hotmail.com.**

6.      This investigation originated on 08/17/2020, 02:51:18 UTC with Snapchat reporting to the National Center for Missing and Exploited Children (NCMEC) that during the aforementioned time, Snapchat User ID: fityshdesofgray uploaded and shared several images of apparent child pornography. NCMEC created a CyberTipline Report #76681395 and NCMEC systems automatically geographically resolved the IP address via a publicly available query. On 08/31/2020, 16:46:19 UTC, NCMEC processed the CyberTip and forwarded it to the Illinois Attorney General's Office – Internet Crimes Against Children (ICAC) division. Based on the IP address geo-locating to the Rantoul, Illinois area, the CyberTip was referred to the Champaign County Sheriff's Office, an Illinois ICAC member agency.

## RELEVANT STATUTORY OFFENSES

7.      This investigation concerns alleged violations of:

**Trafficking Child Pornography** in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1) prohibits any person from knowingly transporting or shipping, or attempting or conspiring to transport or ship, any visual depiction using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer or mail, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

**Distribution of Child Pornography** in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) prohibits any person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed or shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproducing any visual depiction for distribution using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce or through the mails, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

**Possession of Child Pornography** in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITION OF TERMS

8.      The following terms have the indicated meaning in this affidavit:

a.  "Computer," as used herein, refers to "an electronic, magnetic, optical,

4

electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1). "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

b.  "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

c.  "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

d.  The term "email" (electronic mail) is defined as the text messages sent from one person to another via a computer, which may include images. Email can also be sent automatically to many addresses via a mailing list.

e.  The term "Internet" is defined as the worldwide network of computers, a noncommercial, self-governing network devoted mostly to communication and research with roughly 500 million users worldwide. The Internet is not an

5

online service and has no real central hub.  It is a collection of tens of thousands of computer networks, online services, and single user components.  In order to access the Internet, an individual computer user must use an access provider, such as a university, employer, or commercial Internet Service Provider ("ISP"), which operates a host computer with direct access to the Internet.

f.   The term "Internet Protocol Address" or "IP Address" is defined as a unique number assigned to every computer directly connected to the Internet (for example 173.18.96.176).  Each computer connected to the Internet is assigned a unique IP address while it is connected.  The IP address for a user may be relatively static, meaning it is assigned to the same subscriber for long periods of time, or dynamic, meaning that the IP address is only assigned for the duration of that on-line session.

g.   The term "ISP" (Internet Service Provider), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h.   "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

i.   The term "web site" consists of text pages of information and associated graphic images.  The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from the web servers to various web clients via Hyper-Text Transport Protocol.

j.   "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

k.   "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the

provision to the public of computer storage or processing services by means of an electronic communications system.

l.  "Cloud" or "Cloud storage," as used herein, is a mechanism in which files can be saved to an off-site storage system maintained by a third-party – i.e., files are saved to a remote database instead of the (user's) computer's hard drive. The Internet provides the connection between the user's computer and the database for saving and retrieving the files.

m.  A provider of "Electronic Communication Service" ("ESP"), as defined in 18 U.S.C. § 2510(15), is any service that provides to users thereof the ability to send or receive wire or electronic communications.  For example, "telephone companies and electronic mail companies" generally act as providers of electronic communication services.  *See* S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568.

n.  "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

o.  "Short Message Service" ("SMS"), as used herein, is a service used to send text messages to mobile phones.  SMS is also often referred to as texting, sending text messages, or text messaging.  The service allows for short text messages to be sent from one cell phone to another cell phone or from the Web to another cell phone.

## SNAP, INC. AND SNAPCHAT

9.      Snap Inc. is an American multinational technology and social media company that was founded in September of 2011, and based in Santa Monica, California. Snap, Inc. products include Snapchat and Spectacles, among others. Snapchat is a mobile application made by Snap Inc. and available through the iPhone App Store and Google Play. The application provides a way to share moments with photos, videos, and text. Snapchat's differentiating feature from other communications applications is that a sender can set a variable amount of time the message is viewable by the receiver. This time can be between one and ten seconds. At the expiration of

time, the message is deleted from Snapchat's servers. Similarly, the message disappears from the user's devices. If the receiver of a Snapchat message does not access the application on their device the message remains undelivered. Snapchat stores undelivered messages for 30 days. After 30 days the messages are deleted from the company's servers.

10. Snapchat users have the following abilities:

a. **Snaps**: A user takes a photo or video using their camera phone in real-time and then selects one of their friends to send the message to. Pictures and videos can also be sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users can save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

b. **Stories**: A user can add photo or video snaps to their "Story". Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories. Our Stories is a collection of users submitted snaps from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event.

c. **Memories**: Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these

8

Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

d. **Chat**: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

e. **Snapcash**: Snapchat also offers a money transfer service called Snapcash. Users can transfer up to $2,500 per week using this service. Snapcash transactions are only permitted using Visa and Mastercard debit cards issued by a United States Financial Institution. Money transfers can only occur if the sender and receiver both have Snapchat installed and have linked an appropriate debit card to their accounts. To facilitate these transactions, Snapchat retains information about the method and source of payment including debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers.

11. Information that Snapchat possesses and maintains includes:

a. **Personally Identifying Information**: When a user creates an account, they make a unique Snapchat username. This is the name visible to other Snapchat users. A user also enters a date of birth. This is supposed to prevent anyone under the age of 13

from using Snapchat. An email address is required to register a Snapchat account. A new user also must provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code that must be entered before proceeding with the registration step. However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

b. **Usage Information**: While a Snapchat message may disappear, the record of who sent it and when still exists. Snapchat records and retains log files and information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

c. **Device Information:** Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat.

d. **Device Phonebook and Photos:** If a user consents, Snapchat can access contact lists and images from their device's electronic phonebook.

e. **Financial information:** Snapchat retains information about the method and source of payment of customers who use the Snapcash service. This includes debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers. Snapcash generate a receipt for any transaction. The receipts are programmed to automatically delete after the sender and recipient have seen the message and swiped out of the Chat screen, unless either taps to save the message. Snapchat maintains transactional records for ten days. These records include information about the sender and receiver, the transaction amount, and date/time stamps of when the message was sent, received, and opened.

f. **Message Content:** Snapchat's motto is 'delete is our default.' Snapchat deletes a snap once it has been viewed. If the message is not read, because the user has not opened the application, the message is stored for 30 days before being deleted. However, just because snaps no longer appear to the user, it doesn't necessarily mean they are gone. For example, Snapchat has a feature called Replay. This allows users to view a previously viewed snap once per day. This feature is disabled by default and the user must opt-in to use Replay. Also, if a Snapchat user posts an image or video to the My Story feature it can be viewed by their friends for 24 hours. If the user posted to the Our Stories feature, the snaps are archived and can be viewed through Snapchat.

11

12.     Therefore, the computers of Snapchat are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, and account application.

## PROBABLE CAUSE

13.     On September 2, 2020, Investigator Roelfs received a CyberTip referral regarding the possession and distribution of apparent child pornography. CyberTips are routinely distributed from the Illinois Attorney General's Office, Internet Crimes Against Children (ICAC) division. This CyberTipline report originated from the National Center for Missing and Exploited Children (NCMEC). Snapchat Inc. self-reported to NCMEC that one of their users "fityshdesofgray" had uploaded content in the form of digital photographs of apparent child pornography. Snapchat reported that their user identified as the "fityshdesofgray" account, shared three .jpeg child pornography image files on August 17, 2020 at 02:51:18 (UTC) from IP address 173.19.168.116. NCMEC's CyberTipline report stated that the three .jpeg image files matched files that had been previously viewed and categorized as child pornography from other CyberTips. A "Hash Match" of the three .jpeg image files that "fityshdesofgray" uploaded was made and the hash values were listed for each file.  The three file names and their corresponding MD5 hash values are listed below:

   a.  53398e66-c5c6-42b8-a51a-472271fe3978_CHAT_MEDIA_1596792000281.jpeg

   - MD5 – b902bceb35ad2eebd213fd72f9bcc0cc

   b.  53398e66-c5c6-42b8-a51a-472271fe3978_CHAT_MEDIA_1597084990841.jpeg

   - MD5 - b902bceb35ad2eebd213fd72f9bcc0cc

c.   53398e66-c5c6-42b8-a51a-472271fe3978_CHAT_MEDIA_1597084954773.jpeg

- MD5 – fc077c24495522c2a698c8b6b2b75592

14.     The information that Snapchat reported to NCMEC included the following account identifiers for the suspect Snapchat user account:

SNAPCHAT USER ID: **fityshdesofgray**,
PHONE NUMBER: **217-778-9818**,
DATE OF BIRTH: **08-07-1999**,
AND/OR EMAIL ADDRESS: **graylin1999@hotmail.com.**

15.     I viewed the three .jpeg images files from the suspect Snapchat account "fityshdesofgray" that had been submitted to NCMEC, and based on my training and experience, believe the files are child pornography, as that term is defined by federal law.  A description for each .jpeg image file is listed below:

a.   53398e66-c5c6-42b8-a51a-472271fe3978_CHAT_MEDIA_1596792000281.jpeg

b.   53398e66-c5c6-42b8-a51a-472271fe3978_CHAT_MEDIA_1597084990841.jpeg

- These two photos showed a white female approximately 10-12 years of age posing for the camera. The female was naked and positioned in a squatting seated position with her buttocks and feet on a beach towel and her hands on the ground positioned behind her back, her arms supporting her torso in a propped-up position. The focal point of these photo was the girl's vagina which was prominently displayed due to the girl's legs being spread apart. The girl's breasts were fully exposed showing what appeared to be some budding breast development. The background of these two photos consisted of an outdoor scene with plants, grasses and bushes present.

16.     Christine Feller at the Illinois Attorney General's Office – ICAC division informed me that her office conducted an open source records check using the Snapchat account identifiers

and determined a possible suspect named, GRAYLIN VANDERGRIFF, with a date of birth of 08-07-99, and an address of 505 Galaxy Dr., Rantoul, Illinois 61866. This residential address, an address located in Champaign County Illinois, was identified from GRAYLIN VANDERGRIFF'S Illinois driver's license, listed under issued driver's license number V536-2859-9224.

17.     I determined that the suspect IP address, 173.19.168.116, was assigned to the Internet Service Provider: Mediacom Communications Corp., One Mediacom Way, Mediacom Park, NY, 10918. On September 3, 2020, I sent a Department of Justice Administrative Subpoena Duces Tecum (SDT) to Mediacom for the IP records maintained by Mediacom, requesting subscriber information for the user of IP address: 173.19.168.116, on the date and time that the suspect account was used to upload the child pornography files, August 17, 2020, 02:51:18 hrs (UTC).

18.     On September 10, 2020 I received the subpoena return results from Mediacom. The results stated that the IP address had been assigned to high-speed internet Mediacom customer, Kevin Blandford, at 505 Galaxy Dr., Rantoul, IL 61866-3607, the SUBJECT PREMISES, in the Central District of Illinois. Further information from Mediacom billing records revealed the following identifying information connected to the Mediacom account listed in Kevin Blandford's name:

      a.  Primary Phone 708-401-3473
      b.  Alternate Phone 217-898-6960
      c.  ID: 2044378147
      d.  Connection Date: 01/28/15
      e.  Last Pay Date: 08/13/2020
      f.  Customer Equipment – Cable modem Serial number: 306023743962
      g.  Cable modem Mac address: 30:60:23:74:39:62
      h.  Mediacom account #: 8383912500438847

i. Email address: Kevin.Blandford@yahoo.com

19.    On October 14, 2020, I checked the Champaign County Assessor's Office for real estate owner tax parcel information for the 505 Galaxy Dr. address, the SUBJECT PREMISES, in the Central District of Illinois. The current owner of this residence was listed on the 2020 Tax Year bill as being Kevin Blandford. The historical sales information listed in the Champaign County Property Tax Inquiry showed that last sales date for this property occurred in the year 2010 with a sales price amount listed as $58,500.00.

20.    On the same date, I contacted the Rantoul Police Department and inquired on the municipal utility services for 505 Galaxy Dr., the SUBJECT PREMISES, in the Central District of Illinois. I learned that the billing records for the water service for the residential property at 505 Galaxy Dr. was listed under the name Kevin Blandford. The water service billing records dated the water service being in Blandford's name from 2006 to present (Oct 2020). The water service billing records listed Blandford's phone number as being 217-892-9542.

21.    On October 14, 2020 I checked ARMS, the local police database which includes the Village of Rantoul, to see if any police contacts were listed under the last name of Vandergriff. I located a contact listed on 12/07/18 under the name "Crayson" with the same date of birth, 08/07/99, as Graylin EB Vandergriff's date of birth, as listed in the Illinois Secretary of State's driver's license records. The "Crayson" entry appeared to be a typo when the police contact was entered into ARMS. The 12/07/18 contact was a documented incident of Graylin being stopped for speeding while driving a blue colored 2013 Hyundai with Illinois license registration "E605558." I then conducted a soundex search of the last names, Vandergriff and Blandford, for vehicle registrations and issued driver's licenses and identification cards in the "618xx" zip code.

15

The soundex search produced names listed in Rantoul at the 505 Galaxy Dr. address, in the Central District of Illinois. I searched these names for any previous criminal police contacts associated to sex-based offenses but did not locate any documented prior investigations. Based on the names and dates of births, the individuals sharing the address of 505 Galaxy Dr. appear to be family members, including at least one minor.

## CHARACTERISTICS COMMON TO INDIVIDUALS WITH A SEXUAL INTERST IN CHILDREN

22.     Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the sexual exploitation of children which includes the production, distribution, receipt, possession and collection of child pornography:

23.     Individuals with a sexual interest in children receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

24.     Individuals with a sexual interest in children collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals with a sexual interest in children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower, or "groom," the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

25.     Individuals with a sexual interest in children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home, email account or in "virtual" storage, like in the iCloud, Snapchat, or Snapchat. Individuals with a sexual interest in children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

26.     "Child erotica," as used in this Affidavit, is defined as materials or items that are sexually arousing to certain individuals, but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

27.     Likewise, individuals with a sexual interest in children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area or "virtual" storage. These collections are often maintained for several years and are kept close by, or remotely accessible, usually at, or via, the collector's residence, to enable the collector to view his collection, which is highly valued.

28.     Individuals with a sexual interest in children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of

17

individuals with whom they have been in contact and who share the same interests in sex with children or child pornography.

29.     Individuals with a sexual interest in children prefer not to be without their child pornography, or prohibited from its' access, for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

30.     Individuals with a sexual interest in children often have had, or continue to maintain, multiple email and social media accounts. It is common for such individuals to control multiple email addresses in their attempts to remain anonymous or thwart law enforcement's efforts to investigate their illicit activity. Some individuals will create an account to imply that they are of a different age or sex depending on what their online intentions are, or to pose as a person a potential victim already knows. Some individuals with a sexual interest in children will open multiple accounts, whether they be for email, social media or remote storage, with common denominators that can be identified by the host company that operates that medium. For example, a person with a sexual interest in children may create and maintain several different email accounts, but use the same email address as a "recovery" or "verifier" email account. Those individuals will use the same technique for new social media, email or virtual storage accounts when their original ones are compromised or shut down.

31.     Individuals with a sexual interest in children often maintain contact information from their trusted sources or like-minded individuals. They also block, cancel or "unfriend," contacts that they perceive pose a threat to their illegal activity or have not maintained good standing. For example, another individual with a sexual interest in children, but preferred

children of a different age range or ethnicity, might be blocked by the other. They may also block a person who threatens to contact a parent or the police about their online activity. Likewise, a victim of coercion, enticement and/or sexual exploitation may block a suspect who is attempting to further victimize them.

32.     Based upon my training, knowledge and experience in investigations related to child exploitation and my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography and exploitation, I am aware that individuals who access paid subscription or free sites offering images and/or videos depicting child pornography do so for the purpose of downloading or saving these images to their hard drive or other storage media so that the images and videos can be added to their collection. I know that individuals involved in the distribution of child pornography also continue to obtain images of child pornography found elsewhere on the Internet such as newsgroups and websites, and via paid subscriptions, as well as their own "trophy photos" of sexual conquests involving the exploitation of children.

33.     Additionally, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes have a collection of child pornography and will ask children to take and send naked images of the themselves that would constitute child pornography as well as child erotica.

34.     Furthermore, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes utilize social media such as Instagram, Snapchat,

Hotmail! Messenger, KIK Messenger and Craigslist and other online services to meet and communicate with minors. Individuals with a sexual interest in children know that social media allows for seemingly anonymous communication which they can then use to groom the minors and set up meetings in order to sexually exploit them.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

35.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

36.     Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on computer systems owned, maintained, controlled and/or operated by Snap Inc., there exists evidence of a crime, contraband, instrumentalities, and/or fruits of violations of criminal laws as specified herein.  Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the Snapchat account:  SNAPCHAT USER ID **fityshdesofgray**, PHONE NUMBER **217-778-9818**, DATE OF BIRTH **08-07-1999**, AND/OR EMAIL ADDRESS **graylin1999@hotmail.com**, described in Attachment A will contain evidence of a crime.  Accordingly, a search warrant is requested.

37.     Finally, based upon the conduct of individuals who have a sexual interest in children, as set forth in the paragraphs above, that they tend to maintain their collections for long

periods of time, even over the course of years, there is probable cause to believe that evidence of

the offenses of Trafficking, Possessing, and Distributing Child Pornography, is currently located

on the servers owned/operated by Snap, Inc., 2772 Donald Douglas Loop North, Santa Monica,

California 90405.

38.     Based on the forgoing, I request that the Court issue the proposed search warrant.

Because the warrant will be served on Snap, Inc., who will then compile the requested records at

a time convenient to it, reasonable cause exists to permit the execution of the requested warrant

at any time in the day or night.

### JURISDICTION IN CENTRAL DISTRICT OF ILLINOIS

39.     This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction," as defined by 18 U.S.C. § 2711, 18 U.S.C. § 2703(a), 2703(b)(1)(A) and

2703(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has

jurisdiction over the offense being investigated."

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.

s/ Dwayne Roelf

Dwayne Roelfs, Investigator
Champaign County Sheriff's Office

Subscribed and sworn to before me telephonically on October _____, 2020 and I
find probable cause.

s/ Tom Schanzle-Haskins

TOM SCHANZLE-HASKINS
United States Magistrate Judge

21

## <u>ATTACHMENT A</u>

This warrant applies to information associated with the following Snapchat Username:

SNAPCHAT USER ID **fityshdesofgray**, with account identifiers: PHONE NUMBER **217-778-9818**, DATE OF BIRTH **08-07-1999**, AND/OR EMAIL ADDRESS **graylin1999@hotmail.com**

that is stored on the servers owned/operated by Snap, Inc., 2772 Donald Douglas Loop

North, Santa Monica, California 90405.

# ATTACHMENT B

## Particular Things to be Seized

**I.    Information to be disclosed by Snap Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap Inc. ("Snapchat"), including any messages, records, files, logs, or information that have been deleted but are still available to Snapchat, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snapchat is required to disclose the following information to the government for each user ID listed in Attachment A from the dates of August 16, 2020 through the present:

(a)    All basic subscriber information for the Snapchat account(s) associated with the username(s) fityshdesofgray consisting of the email address, display name, phone number, account creation date, and timestamps and IP address for account logins/logouts;

(b)    Any additional contact and personal identifying information, including full name, user identification number, birth date, gender, Snapchat passwords, Snapchat security questions and answers, physical address (including city, state, and zip code), and other personal identifiers;

(c)    All logs, including sender, recipient, date, and time, concerning the previous Snaps sent to or from the Snapchat account(s) with the username(s) fityshdesofgray;

(d)    Any available content information for the Snapchat account(s) associated with the username(s) fityshdesofgray;

(e)    All photos and videos uploaded by fityshdesofgray and all photos and videos uploaded by any user that have that fityshdesofgray tagged in them;

(f)    All location data information for the Snapchat account(s) associated with the username(s) fityshdesofgray;

(g)    All other records of communications and messages made or received by the user, including all Snaps, Stories, Our Stories, Memories, My eyes only, and Chats;

(h)     All past and present lists of friends created by the Snapchat account(s) associated with the username(s) <u>fityshdesofgray</u>;

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 1591, involving "<u>fityshdesofgray</u>" from the dates of August 16, 2020 to the present, including information pertaining to the following matters:

(a) Evidence indicating how and when the Snapchat accounts were accessed or used, to determine the chronological and geographic context of account(s) access, use, and events relating to the crimes under investigation and to the Snapchat account(s) owner(s);

(b) Evidence indicating the Snapchat account owner(s)'s state of mind as it relates to the crimes under investigation;

(c) The identity of the person(s) who created or used the user ID(s), including records that help reveal the whereabouts of such person(s);

(d) The identity of the person(s) who communicated with the user ID(s) about matters relating to the child pornography, and/or the use of a facility of interstate commerce to facilitate, promote or carry on the illegal activity of trafficking and/or distributing child pornography, including records that help reveal their whereabouts and identities;

(e) Evidence of communication with others about travel to meet individuals for the purpose of exchanging child pornography;

(f) Evidence of sexually explicit images to compare to images of child pornography on <u>fityshdesofgray</u>'s electronic storage devices;

(g) Evidence of soliciting others to engage in the distribution or trafficking of child pornography or other unlawful sexual activity;

(h) Any and all images to assist with identification.